502 Pa. 7 (1983)
463 A.2d 409
COMMONWEALTH of Pennsylvania
v.
COMMONWEALTH of Pennsylvania, PENNSYLVANIA LABOR RELATIONS BOARD, Fraternal Order of Police, Intervenor.
INTERNATIONAL UNION, UNITED PLANT GUARD WORKERS OF AMERICA
v.
COMMONWEALTH of Pennsylvania, PENNSYLVANIA LABOR RELATIONS BOARD, Commonwealth of Pennsylvania, Intervenor.
Appeal of COMMONWEALTH of Pennsylvania and International Union, United Plant Guard Workers of America.
Supreme Court of Pennsylvania.
Argued May 25, 1983.
Decided July 8, 1983.
*8 *9 James L. Crawford, Frayda Kamber, Harrisburg, for appellee Pa. Labor Relations Bd.
Gary M. Lightman, Harrisburg, for Fraternal Order of Police.
Lynne M. Mountz, Dep. Chief Counsel, John D. Raup, Chief Counsel, Jay C. Waldman, Gen. Counsel, Harrisburg, for appellant Com. of Pa.
Michael H. Small, Harrisburg, M. Glen Jeakle, II, pro hoc vice, for appellant U.P.G.W.A.
*10 Before ROBERTS, C.J., and LARSEN, FLAHERTY, McDERMOTT, and ZAPPALA, JJ.

OPINION OF THE COURT
FLAHERTY, Justice.
This is an appeal from an order of the Commonwealth Court[1] which affirmed a decision of the Pennsylvania Labor Relations Board (Board). The Board had certified the Fraternal Order of Police, Local 85, (FOP) as the collective bargaining representative of the Capitol Police. The issue to be addressed is whether the determination by the Board, that Capitol Police employed in Harrisburg and in state office buildings in Scranton, Philadelphia, and Pittsburgh are "policemen" within the meaning of Act 111, the Act of June 24, 1968, P.L. 237, No. 111, § 1 et seq., 43 P.S. § 217.1 et seq. (Act 111), is supported by substantial evidence. Act 111, enacted in 1968, encompasses policemen and firemen and provides for binding arbitration in the event of impasse during bargaining for which the covered employes relinquish the prerogative to strike the employer. Appellants contend that the Board conclusion is erroneous in that the employes are "guards" within the meaning of the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, No. 195, § 101 et seq., as amended, 43 P.S. § 1101.101 et seq., (PERA). PERA, enacted in 1970, encompasses public employes generally, including "guards," and retains the employe prerogative to strike.
This case arose on the petition of the FOP filed with the Board on March 14, 1977 seeking to represent the Capitol Police for purposes of collective bargaining pursuant to Act 111. In 1973, under PERA and not Act 111 and pursuant to a stipulation that the employes were not "policemen," the Board had previously certified the International Union, United Plant Guard Workers of America (Plant Guards) as the bargaining representative of all Police Officers I and II *11 and as the exclusive "meet and discuss" representative of all Police Officers III and IV, employed by various agencies throughout the Commonwealth, some of which are Capitol Police. Because the prior certification under PERA evolved from a stipulation of the status of Capitol Police, the instant FOP petition presented the first opportunity of the Board to take evidence on the issue.
A series of hearings was held on the FOP petition before a designated hearing examiner of the Board at which time all parties in interest were afforded a full opportunity to examine and cross-examine witnesses, present testimony and furnish documentary evidence. Findings of fact and conclusions of law were filed. The Board concluded that the officers of the Capitol Police are "policemen" within the meaning of Act 111 and that the unit appropriate for collective bargaining is a subdivision of the employer unit comprising all full-time and regular part-time Capitol Police, including Police Officers IV (Lieutenants), Police Officers III (Sergeants), Police Officers II, Police Officers I, and excluding the Superintendent and Captain. The Board ordered an election which rendered a majority vote by the members of the defined appropriate unit in favor of representation by the FOP, whereupon the FOP was certified by the Board as the exclusive bargaining representative. Exceptions were filed by the Plant Guards and the Commonwealth, resulting in Board modification and vacation of some findings of fact but in the entry of a final order certifying the FOP as the exclusive bargaining representative. From this final order, the Commonwealth and Plant Guards appealed to Commonwealth Court which affirmed in part and reversed that part of the final order which concluded that Capitol Police serving state office buildings in Scranton were "policemen."
Our scope of review is limited to a determination of whether the factual findings of the Board are supported by substantial evidence and whether the conclusions of law are reasonable. If supported by substantial evidence, the findings of the Board are conclusive. Appeal of Cumberland Valley School District, 483 Pa. 134, 394 A.2d 946 (1978) and *12 cases cited therein. See also, PLRB v. Fabrication Specialists, Inc., 477 Pa. 23, 383 A.2d 802 (1978); PLRB v. Butz, 411 Pa. 360, 192 A.2d 707 (1963). "Substantial evidence has been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Hence, appellate review must focus on whether there is rational support in the record, when reviewed as a whole, for the agency action." Republic Steel Corp. v. Workmen's Comp., 492 Pa. 1, 5, 421 A.2d 1060, 1063 (1980) (citation omitted).
The Board did find certain categories of work which might also be found within the realm of typical security guard work. However, duties of police officers and security guards are not mutually exclusive and there is necessarily an overlapping of functions. Accordingly, we focus our attention on those functions and powers beyond the realm of the security guard which distinguish the Capitol Police as "policemen." Indicative of the police aspect of Capitol Police activities as found by the Board include:
That [Capitol Police] officers have authority to make arrests for any violation of the Pennsylvania Crimes Code including felonies, misdemeanors, and summary offenses. That officers may issue parking tickets. Where probable cause to arrest exists, the officer will give Miranda rights. That in calendar year 1976 the Capitol Police reported on uniform crime reports approximately 100 criminal offenses occurring in their jurisdiction and affected (sic) nineteen arrests.

. . . .
That Capitol Police are authorized to issue parking citations for violations on Commonwealth property and to issue moving violation tickets for violations which occur on city streets which run through the Capitol complex.

. . . .
That the Capitol Police have primary law enforcement jurisdiction over all areas in Harrisburg where the Commonwealth owns (and in some cases leases) land. That the Harrisburg City Police cannot enter the Capitol Complex to make an arrest or write citations unless they are in hot pursuit of a suspect.

*13 . . . .
That the Capitol Police have a direct liaison with the Pennsylvania State Police. That the Capitol Police and State Police coordinate their operations and conduct joint investigations with respect to crowd control and traffic control during mass demonstrations. That the Capitol Police have an informal mutual aid agreement with the City of Harrisburg Police.
PLRB Findings of Fact 23, 28, 66 and 67, entered March 29, 1979, June 27, 1979 (citations to notes of testimony omitted) (emphasis supplied).[2] After review of the voluminous record in this case, we have determined that these salient features constituting the traditional police function are supported by substantial evidence. The conclusion of the Board that the Capitol Police are "policemen" is reasonable and emerges from an evidentiary pattern of full police powers and duties confined jurisdictionally to property of the Commonwealth, a geographical limitation not unlike special police forces in other governmental or principality jurisdictions. The evidence is not of limitations of duties and powers as would be consistent with lesser empowered security guards, but rather of mere jurisdictional confinement.
In support of their assertion that the Capitol Police have status as "guards," appellants emphasize that the Capitol Police do not perform their police functions with the same frequency as police forces of comparable size. We are not persuaded that the status of the Capitol Police as "police" is to depend upon frequency of acts. Frequency of performance may be a function of the relative infrequency of disruptive activity in and around state buildings as compared to the community at large and thus does not diminish the power or eliminate the duty of the Capitol Police, but merely reduces the necessity of exercising those powers and duties. In the event of need, they possess the ability, capacity and authority to interpose in any situation requiring *14 police intervention. Capitol Police are required "and their duty shall be" to enforce order on state property, to arrest persons in breach of the law, and "to carry the offender before the proper alderman, justice of the peace of magistrate and prefer charges against him under the laws of the Commonwealth." 71 P.S. § 646.[3] The performance of these duties is statutorily mandated and is not merely incidental to the responsibilities of the Capitol Police. Cf. Venneri v. County of Allegheny, 12 Pa.Commonwealth Ct. 517, 316 A.2d 120 (1974). Accordingly, appellants' contention is without merit.
The legislative grant of powers is of substantial concern in determining status of employes for applicability of Act 111. See e.g. Hartshorn v. County of Allegheny, 460 Pa. 560, 333 A.2d 914 (1975). Section 646(e) of the Administrative Code, empowering the Capitol Police, provides in pertinent part:

*15 (e) To exercise the same powers as are now or may hereafter be exercised under authority of law or ordinance by the police of the cities of Harrisburg, Pittsburgh and Philadelphia, municipalities in Dauphin County wherein State buildings are located . . .;
Section 646(e) is to be construed liberally with a view, inter alia, to the object to be attained by the statute and the consequences of a particular interpretation. Statutory Construction Act of 1972, Act of Dec. 6, 1972, No. 290, § 3, 1 Pa.C.S.A. §§ 1928(c) and 1921(4) and (6). Thus, by subsection (e) of this enabling legislation, the Capitol Police are vested with the same powers exercised by the police of the cities in which the Capitol Police are located. Because the enabling legislation does not specifically name police of the city of Scranton as being the model for powers held by Capitol Police in Scranton, the Commonwealth Court determined that Capitol Police in Scranton were not vested with traditional police powers and hence are not "policemen" for purposes of Act 111. However, this interpretation assumes the legislature intended to deprive Capitol Police serving in state office buildings in Scranton of the same general powers and duties of Capitol Police serving elsewhere in the Commonwealth. Such an interpretation is in derogation of the clear import of § 646(e) that Capitol Police shall enjoy the powers and duties of police in the city or municipality in which they are currently serving. As such, Capitol Police serving in Scranton are empowered as are Scranton Police and police generally throughout the Commonwealth.[4] Accordingly, we reverse that part of the Commonwealth Court decision which reversed the Board conclusion that Capitol Police in Scranton are "policemen." We affirm that part of the Commonwealth Court decision which approves "police" *16 status of Capitol Police serving in Pittsburgh, Philadelphia, and Harrisburg. In addition, we have reviewed all determinations of the Commonwealth Court briefed by the parties to this appeal and affirm the Commonwealth Court's disposition of those issues.
Affirmed in part and reversed in part.
ROBERTS, C.J., files a dissenting opinion.
NIX and HUTCHINSON, JJ., did not participate in the consideration or decision of this case.
ROBERTS, Chief Justice, dissenting.
Section 604(3) of "Act 195," the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, 43 P.S. § 1101.604(3) (Supp.1983), directs that the Pennsylvania Labor Relations Board shall not permit "any individual employed as a guard to enforce against employes and other persons, rules to protect property of the employer or to protect the safety of persons on the employer's premises" to be included in any bargaining unit with "other public employes." Those individuals to be excluded may, however, form "separate homogeneous employes organizations. . . ." Id.
As is made clear by Section 2416 of the Administrative Code, Act of April 9, 1929, P.L. 177, as amended, 71 P.S. § 646 (1962 and Supp.1983), Capitol Police are individuals employed to protect Commonwealth property and persons on its premises. Section 2416 provides:
"The Capitol Police, Commonwealth Property Police and the Security or Campus Police of all State colleges and universities, State aided or related colleges and universities and community colleges shall have the power, and their duty shall be:
(a) To enforce good order in State buildings and on State grounds in Dauphin County, in the Pittsburgh State Office Building and the grounds, in the Philadelphia State Office Building and the grounds and in the grounds and buildings of all State colleges and universities, State aided or related colleges and universities and community colleges;

*17 (b) To protect the property of the Commonwealth in State grounds and buildings in Dauphin County, in the Pittsburgh State Office Building and grounds, in the Philadelphia State Office Building and grounds and in the grounds and buildings of all State colleges and universities, State aided or related colleges and universities and community colleges;
(c) To exclude all disorderly persons from the premises of the State Capitol, State buildings in Dauphin County, the Pittsburgh State Office Building and the Philadelphia State Office Building and from the grounds and buildings of all State colleges and universities, State aided or related colleges and universities and community colleges. . . ."
Although Capitol Police possess authority to "arrest any person" who commits an offense on Commonwealth property, see § 2416(h), 71 P.S. § 646(h), that authority clearly is incidental to their primary responsibility as security guards.
Accordingly, the order of the Commonwealth Court should be reversed, and Capitol Police permitted to bargain collectively under Act 195 as security guards, not under Act 111 as "policemen."
NOTES
[1] Commonwealth of Pennsylvania v. Comm., Pa. Labor Relations Board, 64 Commonwealth Ct. 525, 441 A.2d 470 (1982).
[2] It was stipulated that the evidence and testimony given relevant to Capitol Police serving in Harrisburg would serve to establish the powers, duties and activities of Capitol Police serving in Pittsburgh, Philadelphia and Scranton.
[3] Section 646 of the Administrative Code provides in pertinent part: § 646 Capitol Police, Commonwealth Property Police and Campus Police

The Capitol Police . . . shall have the power, and their duty shall be:
(a) To enforce good order in State buildings and on State grounds . . .;
(b) To protect the property of the Commonwealth in State grounds and buildings . . .;
(c) To exclude all disorderly persons from the premises . . .;
(d) In the performance of their duties to adopt whatever means may be necessary;
(e) To exercise the same powers as are now or may hereafter be exercised under authority of law or ordinance by the police of the cities of Harrisburg, Pittsburgh and Philadelphia, municipalities in Dauphin County wherein State buildings are located . . .;
. . . .
(g) To order off said grounds and out of said buildings all vagrants, loafers, trespassers, and persons under the influence of liquor, and, if necessary, remove them by force, and, in case of resistance, carry such offenders before an alderman, justice of the peace or magistrate and
(h) To arrest any person who shall damage, mutilate or destroy the trees, plants, shrubbery, turf, grass-plots, benches, buildings or structures, or commit any other offense within State buildings . . .;
Section 2416 of the Administrative Code, Act of April 9, 1929, P.L. 177, as amended, 71 P.S. § 1 et seq., 71 P.S. § 646 (emphasis supplied).
[4] That Scranton is considered an integral part of the Capitol Police force is supported by Board Finding # 46 regarding the appointment of a lieutenant to travel among Pittsburgh, Philadelphia, Scranton, and Harrisburg to coordinate the administrative and operation functions of the police force. Additionally, three Police Officers III are designated as managers and are assigned to the State Office Buildings in Pittsburgh, Philadelphia and Scranton, at which locations they are ranking officer. Finding # 51.