538 A.2d 1368

COMMONWEALTH of Pennsylvania,

v.

Christine Marie LYMPH, Appellant.

Superior Court of Pennsylvania.

Argued Dec. 1, 1987.

Filed March 17, 1988.

Douglas B. Marcello, Harrisburg, for appellant.

Yvonne A. Okonieski, Deputy District Attorney, Harrisburg, for Com., appellee.

Before OLSZEWSKI, DEL SOLE and JOHNSON, JJ.

JOHNSON, Judge:

This is an appeal from a Judgment of Sentence. Because we find that Capitol Police Officer Chiricos acted within the parameters of his authority, we affirm.

On the evening of January 2, 1986, Officer Kessler, State Capitol Police Department, was on foot patrol in the area of the parking garage near the Main Capitol Building. A vehicle approached and stopped at the entrance booth to the garage. The driver of the vehicle informed Officer Kessler that he intended to drop off his female passenger, appellant, Christine Lymph, at her car. Officer Kessler testified at trial:

> A. At that point when I leaned down to answer the driver, so I could speak to him, I looked in the vehicle. I saw the passenger who was identified as the defendant.
>
> She appeared—I might note there are bright lights there. There is fluorescent lights overhead so it is

quite illuminated. She appeared to be slouched. Her eyes appeared to be glassy. She appeared, generally, to be intoxicated.

N.T. 5/15/86 at 7.

The car proceeded down into the lower levels of the garage. A minute or two later, Officer Kessler heard a woman's voice, loud but unintelligible. The officer next observed two vehicles leaving the garage—one operated by the male in the same vehicle in which he had arrived, and the other operated by appellant. Officer Kessler then broadcast an alert for a driver under the influence together with a description of appellant and her vehicle, stating his belief that she was under the influence of alcohol.

Capitol State Police Officer Chiricos received Officer Kessler's radio communication while in his patrol car within the Capitol Complex. He then observed defendant's vehicle approximately two blocks ahead as it entered the State Street Bridge going eastbound. He followed her vehicle and made the following observations:

A. The vehicle braked sharply right at 21st Street, right near the Parkside Cafe, on that curve there. The vehicle braked sharply and traveled over the yellow line and an oncoming car kind of veered off a little to avoid it. Then, after that, the vehicle crossed the center yellow line approximately four to five times between 21st Street and 25th Street, in that four block area.

N.T. 5/15/86 at 22.

Officer Chiricos testified that at the time of his observations he was on official patrol duty which included state owned property at 21st Street and State Street. The officer's patrol route was the same as appellant's course of travel. After making his observations Officer Chiricos stopped appellant's vehicle. He testified that appellant's eyes were red and glassy and that he could detect an odor of alcohol emanating from appellant's car window. He asked her to perform various field tests which she failed to perform satisfactorily. Appellant was then placed under arrest for driving under the influence of alcohol. Subse-

quent blood tests revealed a .20% blood alcohol content in appellant's blood.

On May 15, 1986, following denial of appellant's motion to suppress, appellant was tried and found guilty in a nonjury trial of Driving Under the Influence, 75 Pa.C.S. § 3731(a) before the Honorable Sebastian D. Natale. Post-trial motions were filed, briefed and denied.

On April 28, 1987, the Court sentenced appellant to not less than two (2) days nor more than twelve (12) months. This appeal followed.

The case presents the following issues:

I. WHETHER THE ORIGINAL OBSERVING OFFICER HAD PROBABLE CAUSE TO BELIEVE A CRIME HAD BEEN COMMITTED WITHIN HIS PRIMARY JURISDICTION TO JUSTIFY PURSUIT OUTSIDE HIS JURISDICTION?

II. WHETHER OFFICER CHIRICOS, THE ARRESTING OFFICER, CONDUCTED AN ILLEGAL, EXTRA–TERRITORIAL INVESTIGATION PURSUANT TO THE PENNSYLVANIA ADMINISTRATIVE CODE AND THE MUNICIPAL POLICE JURISDICTION ACT?

III. WHETHER SUPPRESSION OF THE EVIDENCE IS THE APPROPRIATE REMEDY FOR AN ILLEGAL, EXTRA–TERRITORIAL INVESTIGATION AND ARREST?

■ Appellant contends that Officer Kessler, the original observing officer did not have the probable cause necessary for arrest and search and seizure. *Commonwealth v. Kelly*, 487 Pa. 174, 409 A.2d 21 (1979). We agree with the trial court that his lack of probable cause, standing alone, is of no legal significance. The proper focus of the probable cause issue is Officer Chiricos, the arresting officer. Officer Chiricos directly observed appellant driving erratically. (N.T. 5/15/86 at 22).

Observation of erratic driving has been recognized as providing the basis for probable cause to arrest for reckless

driving. *Commonwealth v. Barkley*, 234 Pa.Super. 503, 341 A.2d 192 (1975); *Commonwealth v. Mathious*, 237 Pa.Super. 522, 352 A.2d 172 (1975).

In addition probable cause to arrest is also established by considering Officer Chiricos' stop of appellant's automobile, which was an investigatory stop based on reasonable suspicion after having observed erratic driving. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). When appellant subsequently failed the field sobriety tests Officer Chiricos had probable cause to make the arrest. We therefore agree with the trial court that Officer Chiricos had probable cause for arrest.

Appellant's next argument is that her arrest was illegal because Officer Chiricos was outside his jurisdiction as a Capitol Police Officer and therefore had no authority to act. The authority and jurisdiction of the Pennsylvania State Capitol Police are defined in § 2416 of the Administrative Code, Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. § 646 (Purdon Pamp.1987) which provides in relevant part:

> The Capitol Police ... and the Security or Campus Police of all State colleges and universities, State aided or related colleges and universities and community colleges shall have the power, and their duty shall be:
>
> (a) To enforce good order in State buildings and on State grounds in Dauphin County ...
>
> (e) To exercise the same powers as are ... exercised....by the police ... [in the municipalities in which they are located].
>
> (h) To arrest any person who shall damage, mutilate or destroy the trees, plants, shrubbery, turf, grass-plots, benches, buildings, or commit any other offense within [ ... their respective jurisdictions].
>
> Security and Campus Police shall exercise their powers and perform their duties only on the premises of the colleges and universities ... by or for which they are employed and only and after they have completed a course of training including crisis intervention training and riot control ... except, that Campus Police em-

ployed by state owned colleges and universities located in ... municipalities ... are authorized, in emergency situations occurring within the municipality, upon the request of the mayor or other executive authority and under the direction of the local law enforcement authorities, to exercise those powers and perform those duties conferred pursuant to this section within the municipality for the limited purpose of aiding local authorities in emergency situations.

*Id.*

■ Appellant contends that this section must be construed narrowly to confine the jurisdiction of Capitol Police to the limits of state property. But we read this statute as granting Capitol Police the same powers as the local (traditional) police in the municipalities in which they are employed. The breadth of their powers is further exemplified by § 646(d), which provides; "[i]n the performance of their duties [Capitol Police and campus police may] ... adopt whatever means necessary." *Id.* Municipal police (traditional police officers employed by a municipality), have the power to make extra-territorial arrests when in pursuit of summary offenders pursuant to 42 Pa.C.S. § 8953(a)(2) and (5):

### Statewide municipal police jurisdiction

(a) **General rule.**—Any duly employed municipal police officer who is within this Commonwealth, but beyond the territorial limits of his primary jurisdiction, shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office as if enforcing those laws or performing those functions within the territorial limits of his primary jurisdiction in the following cases:

(2) Where the officer is in hot pursuit of any person for any offense which was committed, or which he has probable cause to believe was committed, within his primary jurisdiction and for which offense the officer

continues in fresh pursuit of the person after the commission of the offense.

(5) Where the officer is on official business and views an offense, or has probable cause to believe that an offense has been committed, and makes a reasonable effort to identify himself as a police officer and which offense is a felony, misdemeanor, breach of the peace or other act which presents an immediate clear and present danger to persons or property.

42 Pa.C.S. § 8953(a)(2) and (5).

▉▉ The trial court found that Officer Chiricos made a legal arrest pursuant to 42 Pa.C.S. § 8953(a)(5) because he was on duty within the official patrol route when he observed appellant's erratic driving.

Special police in Pennsylvania possess arrest and search powers codified under widely scattered statutes which differ as to the scope of subject matter jurisdiction and territorial jurisdiction. The most contemporaneous, practical and conclusive interpretation of a statute is to be gained from that given to it by state courts. *Turner v. May Corp.*, 285 Pa.Super. 241, 427 A.2d 203 (1981).

Appellant's reliance on *Commonwealth v. Roberts*, 356 Pa.Super. 309, 514 A.2d 626 (1986) to indicate that special police have no authority to make an arrest outside their geographic jurisdictions is misplaced. The police officers in *Roberts* were local park police who observed an offense off park property and made an arrest off park property. Park police receive their authority from the Act of August 9, 1955, P.L. 323, 16 P.S. § 2512 which does not provide specific authority for extra territorial arrests nor does it provide that park police have the same authority as their municipal counterparts. The authority of park police was found by the Court in *Roberts* to be narrowly limited to their geographic jurisdiction.

Conversely, Pennsylvania courts that have considered the arrest and search powers of Capitol Police and Campus Police have treated them as traditional police officers. In *Commonwealth v. Holderman*, 284 Pa.Super. 161, 425 A.2d

752 (1981) this Court considered whether Campus Police Officers had the power to pursue and arrest summary offenders who flee their jurisdiction. The defendant in *Holderman*, relying on 71 P.S. § 646 (Purdon Pamp.1987) argued that the authority of Campus Police is limited by statute to the premises of the school where the officers are employed. This Court rejected the argument and held that Campus Police have all the powers possessed by their local counterparts, including the right to arrest summary offenders when in fresh pursuit of them. *See generally* Comment, Arrest and Search Powers of Special Police in Pennsylvania: Do your Constitutional Rights Change Depending on the Officer's Uniform?, 59 Temp.L.Q. 497 (1986) (for general review of search powers in Pennsylvania).

In *Commonwealth v. Pennsylvania Labor Relations Board*, 502 Pa. 7, 463 A.2d 409 (1983) the Pennsylvania Supreme Court, in the context of a labor dispute, concluded that Capitol Police were "police" and not merely guards for purposes of a statute providing police with binding arbitration in case of an impasse during labor negotiations. In so concluding, the Court emphasized that Capitol Police possess statutorily mandated powers and duties that are equivalent to those of traditional police. After review of the case law, statutes, and trial court opinion, we agree with the trial court that both the plain meaning of 71 P.S. § 646(e) and 42 Pa.C.S. § 8953 and the interpretation of the statutes by the courts of this Commonwealth provide Capitol Police with the authority to make extra territorial arrests under certain circumstances. Capitol Police Officer Chiricos was acting within the scope of 71 P.S. § 646(e) as delineated in 42 Pa.C.S. § 8953 when, while on duty within his official patrol route he directly observed the misdemeanor offense which led to his extra territorial arrest of appellant. Accordingly, appellant's arrest was not illegal.

Appellant's final argument is that the evidence from the illegal arrest must be suppressed. Since we find appellant's arrest to be legal, we find this argument to be without merit.

Judgment of sentence affirmed.