543 A.2d 1216

COMMONWEALTH of Pennsylvania, Appellant,

v.

Brian L. SWITZER, Appellee.

Superior Court of Pennsylvania.

Argued Feb. 2, 1988.

Filed June 17, 1988.

138

Yvonne A. Okonieski, Deputy District Attorney, Harrisburg, for Com., appellant.

William T. Tully, Harrisburg, for appellee.

Before CAVANAUGH, OLSZEWSKI and POPOVICH, JJ.

POPOVICH, Judge:

This is an appeal from the Order of the Court of Common Pleas of Dauphin County, Criminal Division, entered October 7, 1986, granting appellee's, Brian L. Switzer's, motion to suppress evidence. We reverse.

On May 26, 1986, appellee was arrested for driving under the influence of alcohol (75 Pa.C.S.A. § 3731(a)(1–4) and driving a vehicle at an unsafe speed (75 Pa.C.S.A. § 3361) by Officer Eric P. Kessler of the Pennsylvania State Capitol Police (hereinafter referred to as "Capitol Police"). Initially, Officer Kessler, while on duty and coming from a state facility near 16th and Chestnut Streets in Harrisburg, observed appellee, who was driving a pick up truck, run a red light at the intersection of 15th and State Streets. Officer Kessler then followed appellee on State Street from 15th to

13th Streets when both stopped for a red light. Officer Kessler then continued to follow appellee who was traveling over the State Street Bridge at an excessive rate of speed. Officer Kessler determined that appellee was traveling at approximately 60 miles per hour in a 35 miles per hour zone. Upon crossing the bridge, appellee was stopped by Officer Kessler on 7th Street in the vicinity of a number of State owned facilities.

Officer Kessler approached appellee's truck in order to converse with appellee. He observed appellee's eyes to be "red, glassy and dilated" and noted an odor of alcoholic beverage. (N.T., October 7, 1986).

Appellee failed a field sobriety test which was administered by Officer Wass of the Capitol Police. Officer Kessler asked appellee if he would agree to take an intoxilyzer test. Officer Kessler then placed appellee in the rear of his police car and gave him his *Miranda* warnings. Appellee admitted to being at a bar for two (2) hours prior to the stop in question and drinking six (6) gin and tonics. Appellee was transported to the Harrisburg Police Department, where he was given an intoxilyzer test.

On October 7, 1986, a hearing was held before the Honorable John C. Cherry on appellee's omnibus pre-trial motion to suppress evidence, i.e. Officer Kessler's observations concerning appellee's physical condition, field tests, statements and chemical breath test results. The lower court granted appellee's motion. This appeal followed.

The Commonwealth presents two issues for our review on appeal: (1) whether the lower court erred in suppressing evidence based upon Capitol Police's lack of primary jurisdiction; and, (2) whether the lower court erred in holding that the Municipal Police Jurisdiction Act (42 Pa.C.S.A. § 8951 *et seq.*) does not apply to Capitol Police.

Before discussing the merits of the Commonwealth's claims, we must determine whether the Order appealed

from in the instant case is final. In *Commonwealth v. Dugger,* 506 Pa. 537, 545, 486 A.2d 382, 386 (1985), the Pennsylvania Supreme Court held:

> [T]he Commonwealth's appeal of a suppression order is proper as an appeal from a final order when the Commonwealth certifies in good faith that the suppression order terminates or substantially handicaps its prosecution.

Since the record shows that the certification requirement has been satisfied in the case at bar, we hold that the Commonwealth has an absolute right of appeal to this Court to test the validity of a pre-trial suppression order. *Id.*

In *Commonwealth v. Hubble,* 509 Pa. 497, 504 A.2d 168, 171 (1986), the Court identified the appropriate standards of appellate review of a suppression court's rulings:

> On review, our responsibility is 'to determine whether the record supports the factual findings of the court below and the legitimacy of the inferences and legal conclusions drawn from those findings.' *Commonwealth v. Goodwin,* 460 Pa. 516, 521, 333 A.2d 892, 895 (1975).

It is the Commonwealth's contentions that the lower court erred in suppressing the evidence in question based upon the Capitol Police's lack of primary jurisdiction and erred in holding that the Municipal Police Jurisdiction Act (42 Pa.C.S.A. § 8951 *et seq.*) does not apply to Capitol Police.

■ The jurisdiction of the Capitol Police is defined in § 2416 of the Administrative Code of 1929, *as amended,* 71 Pa.S.A. § 646 Purdon Pamp. (1987). The pertinent sections to this proceeding are subsection (e) and (h), which read:

> § 646 (Adm.Code § 2416). Capitol Police, Commonwealth Property Police and Campus Police.

> The Capitol Police, Commonwealth Property Police and the Security or Campus Police of all State colleges and universities, State aided or related colleges and universi-

ties and community colleges shall have the power, and their duty shall be:

. . . . .

(e) To exercise the same powers as are now or may hereafter be exercised under authority of law or ordinance by the police of the cities of Harrisburg, Pittsburgh and Philadelphia, municipalities in Dauphin County wherein State buildings are located and in municipalities wherein said colleges, universities and community colleges are located:

(h) To arrest any person who shall damage, mutilate or destroy the trees, plants, shrubbery, turf, grass-plots, benches, buildings or structures, or commit any other offense within State buildings on State grounds in Dauphin County, the Pittsburgh State Office Building and grounds, and the Philadelphia State Office Building and grounds, the executive mansion, and the grounds and buildings of all State colleges and universities, State aided or related colleges and universities and community colleges, and carry the offender before the proper alderman, justice of the peace or magistrate and prefer charges against him under the laws of the Commonwealth.

Security and Campus Police shall exercise their powers and perform their duties only on the premises of the State colleges and universities, State aided or related colleges and universities and community colleges by or for which they are employed and only and after they have completed a course of training including crisis intervention training and riot control as approved by the Department of Education except, that Campus Police employed by State owned colleges and universities located in any municipalities, other than cities of the first class or second class, are authorized, in emergency situations occurring within the municipality, upon the request of the mayor or other executive authority and under the direction of the local law enforcement authorities, to exercise those powers and perform those duties conferred pursuant to this section

within the municipality for the limited purpose of aiding local authorities in emergency situations.

As amended 1965, Sept. 28, P.L. 553 § 4; 1968, July 7, P.L. 297, No. 149, § 1; 1975, July 30, P.L. 149, No. 75, § 1, imd. effective; 1978, Sept. 27, P.L. 777, No. 149, § 4, imd. effective.

Appellee contends that the foregoing statute limits the jurisdiction of the Capitol Police to the borders of state property. We disagree. 71 Pa.S.A. § 646(e) specifically grants to the Capitol Police the same powers that are exercised by the police of the cities or municipalities in which they are employed. In addition, in § 646(d), the Capitol Police are permitted in the performance of their duties "to adopt whatever means may be necessary."

In *Commonwealth v. Pennsylvania Labor Relations Board*, 502 Pa. 7, 463 A.2d 409 (1983), the Pennsylvania Supreme Court, in its attempt to settle a labor dispute, concluded that Capitol Police were "police" and not security guards. Moreover, the Court held that the performance of police duties by Capitol Police is "statutorily mandated and not merely incidental to the responsibilities of the Capitol Police." 502 Pa. at 14, 463 A.2d at 412–13. The Court further concluded:

Section 646(e) is to be construed liberally with a view, inter alia, to the object to be attained by the statute and the consequences of a particular interpretation. Statutory Construction Act of 1972, Act of Dec. 6, 1972, No. 290, § 3, 1 Pa.C.S.A. §§ 1928(c) and 1921(4) and (6). Thus, by subsection (e) of this enabling legislation, the Capitol Police are vested with the same powers exercised by the police of the cities in which the Capitol Police are located.

502 Pa. at 15, 463 A.2d at 413.

Thus, we find that Capitol Police are considered "police" and are vested with the same powers exercised by the police of the cities and municipalities in which the Capitol Police

are located. 71 Pa.S.A. § 646(e) and (h). *Commonwealth v. Pennsylvania Labor Relations Board, supra.*

In the instant case, the lower court held that the evidence must be suppressed due to the fact that the pursuit and arrest occurred on streets within the city of Harrisburg, outside the jurisdiction of the Capitol Police, rather than in a state building or on the grounds surrounding such a building.

42 Pa.C.S.A. § 8953(a)(2) and (5) provide municipal police with the power to make extra-territorial arrests:

§ 8953. **Statewide municipal police jurisdiction**

(a) **General rule.**—Any duly employed municipal police officer who is within this Commonwealth, but beyond the territorial limits of his primary jurisdiction, shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office as if enforcing those laws or performing those functions within the territorial limits of his primary jurisdiction in the following cases:

(2) Where the officer is in hot pursuit of any person for any offense which was committed, or which he has probable cause to believe was committed, within his primary jurisdiction and for which offense the officer continues in fresh pursuit of the person after the commission of the offense.

(5) Where the officer is on official business and views an offense, or has probable cause to believe that an offense has been committed, and makes a reasonable effort to identify himself as a police officer and which offense is a felony, misdemeanor, breach of the peace or other act which presents an immediate clear and present danger to persons or property.

1982, June 15, P.L. 512, No. 141, § 4, effective in 60 days.

Thus, pursuant to 71 Pa.S.A. § 646(e), the power which municipal police possess to make arrests outside their jurisdiction, subject to the provisions of 42 Pa.C.S.A. § 8953(a)(2) and (5), extends also to Capitol Police.

In *Commonwealth v. Holderman,* 284 Pa.Super. 161, 425 A.2d 752 (1981), this Court considered whether campus police, whose jurisdiction is also defined under 71 Pa.S.A. § 646, could make a warrantless arrest outside the boundaries of the campus while in fresh pursuit of a summary offender. In *Holderman, supra,* the campus police officer observed the defendant make an improper left turn from Shortlidge Road, which is located on the Pennsylvania State University campus, onto Park Avenue, located outside the campus. Following pursuit of the defendant through the intersection, the officers stopped his vehicle on Park Avenue. The defendant was charged by the officers with the summary traffic offense of making an improper turn (75 Pa.C.S.A. § 3331 and with the offense of driving under the influence of alcohol (75 Pa.C.S.A. § 3731), based on observations of the defendant following the stop. The *Holderman* court held:

> ... [P]olice officers in Pennsylvania are empowered to make warrantless arrests of summary offenders outside the perimeter of their jurisdiction when in fresh pursuit. 42 Pa.C.S. § 8901. See *Commonwealth v. Robb,* 238 Pa.Super. 62, 352 A.2d 515 (1975). By virtue of subsection (e) of 71 P.S. § 646, the General Assembly has given campus police officers the same powers as those possessed by their municipal counterparts. By a fair reading of the statute, this grant of powers appears to encompass the power to make extraterritorial arrests. Consequently, campus police officers, in this rare instance, may pursue and arrest a summary offender fleeing campus.[1] (footnote added).

284 Pa.Super. at 166, 425 A.2d at 755. The *Holderman* court further held:

> Moreover, 71 P.S. § 646, like 42 Pa.C.S. § 8901, is not a penal statute and therefore must be liberally construed to

---

1. 42 Pa.C.S.A. § 8901 has since been repealed. (1982, June 15, P.L. 512, No. 141, § 3, effective in 60 days).

   It was replaced by 42 Pa.C.S.A. § 8953 which, as previously noted, currently provides municipal police in Pennsylvania with the power to make extra-territorial arrests.

effect its object and to promote justice. 1 Pa.C.S. § 1928. See *Commonwealth v. Fiume*, [278] Pa.Super. [75], 419 A.2d 1364 (1980); *Commonwealth v. Robb, supra.* A campus police force is a valuable resource of not only the college or university it serves but the surrounding municipality as well.[2] (footnote added).

284 Pa.Super. at 167, 425 A.2d at 755–56.

However, in the instant case, the lower court relied on *Commonwealth v. Roberts*, 356 Pa.Super. 309, 514 A.2d 626 (1986) in arriving at its decision. In *Roberts id.*, this Court affirmed an order suppressing evidence obtained during an arrest made by a park police officer, while outside his primary jurisdiction. The *Roberts* court determined that 42 Pa.C.S.A. § 8953 (Statewide Municipal Police Jurisdiction Act) did not apply to park police officers. Rather, the park police officers receive their authority from 16 Pa.S.A. § 2512, which provides:

**§ 2512.  Duty of Police**

It shall be the duty of the police or guards appointed to duty in any recreation places, without warrant, forthwith to arrest any offender against the rules and regulations, ordained or resolved by the county commissioners, that they may detect in the commission of such offense, and to take the person so arrested forthwith before a magistrate, alderman or justice of the peace having competent jurisdiction. 1955, Aug. 9, P.L. 323, § 2512.

A careful reading of 16 Pa.S.A. § 2512 shows that park police officers are not given the power to make extra-territorial arrests. *Commonwealth v. Roberts, id.*

■ Unlike Park Police, Capitol Police and Campus Police do possess the authority to make extra-territorial arrests under 71 Pa.C.S.A. § 646(e) and the extra-territorial provisions of 42 Pa.C.S.A. § 8953. Therefore, in the instant case, we find that Capitol Police Officer Kessler, under 71

**2.**  As mentioned in footnote 1, 42 Pa.C.S.A. § 8901 has been repealed and has been replaced by 42 Pa.C.S.A. § 8953.

Pa.S.A. § 646(e) and 42 Pa.C.S.A. § 8953(a)(2) and (5), properly. made an extra-territorial arrest of appellee.

The case of *Commonwealth v. Lymph*, 372 Pa.Super. 97, 538 A.2d 1368 (1988), is directly on point. In *Lymph*, we held that:

> Both the plain meaning of 71 P.S. § 646(e) and 42 Pa.C.S.A. § 8953 and the interpretation of the statutes by the courts of this Commonwealth provide Capitol Police with the authority to make extra-territorial arrests under certain circumstances. Capitol Police Officer Chiricos was acting within the scope of 71 P.S. § 646(e) as delineated in 42 Pa.C.S. § 8953 when, while on duty within his official patrol route he directly observed the misdemeanor offense which led to his extra-territorial arrest of appellant [for driving under the influence of alcohol]. Accordingly, appellant's arrest was not illegal [and evidence from that arrest will not be suppressed.] *Lymph*, 538 A.2d at 1372.

Similarly, we find that appellee's arrest for driving under the influence of alcohol and driving a vehicle at an unsafe speed was not illegal. Officer Kessler, while on duty covering his patrol route as a Capitol Police officer, directly observed appellee run a red light and travel 60 miles per hour in a 35 miles per hour area, both summary offenses, and observed the signs of driving under the influence of alcohol, a misdemeanor, once having stopped appellee's vehicle. Therefore, pursuant to 71 Pa.S.A. § 646(e) and the extra-territorial arrest provision of 42 Pa.C.S.A. § 8953(a)(5), Officer Kessler possessed the power to make his extra-territorial arrest of appellee, despite the fact that the offenses did not take place in state buildings or on the grounds surrounding said state buildings.

Since appellee's arrest was not illegal, we find that the lower court erred in granting appellee's motion to suppress evidence.

Order reversed and the case is remanded for proceedings consistent with this opinion.

Jurisdiction is relinquished.