**C. Larry McKINLEY**

**v.**

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 14, 1999.

Decided Oct. 26, 1999.

---

**16.** This time, Petitioners did *not* request a hearing.

Elaine N. Blass and Timothy P. Wile, Asst. Counsel In-Charge, Harrisburg, for appellant.

John B. Mancke, Harrisburg, for appellee.

Before COLINS, President Judge, and DOYLE, J., McGINLEY, J., SMITH, J., FRIEDMAN, J., KELLEY, J., and LEADBETTER, J.

SMITH, Judge.

The Pennsylvania Department of Transportation, Bureau of Driver Licensing (DOT) appeals from the May 11, 1997 order of the Court of Common Pleas of Dauphin County that sustained the statutory appeal of C. Larry McKinley from a one-year suspension of his operating privilege.[1] DOT questions whether the trial court erred in holding that an airport authority police officer employed by the Commonwealth lacked authority to make a valid extraterritorial arrest; whether a Harrisburg International Airport police officer is a "police officer" within the meaning of Sections 102 and 1547 of the Vehicle Code, *as amended*, 75 Pa.C.S. §§ 102 and 1547; whether DOT's authority to suspend a driver's license under Section 1547(b)(1) of the Vehicle Code is conditioned upon a legal arrest; and whether the officer had authority to arrest McKinley when in fresh pursuit for observed violations that occurred on airport premises.

On January 4, 1997, Corporal Laurence A. Miller of the Harrisburg International Airport Police observed McKinley's black Ford utility vehicle parked on airport property on the side of a ramp between Airport Drive and the highway connecting to State Route 283. After Corporal Miller passed McKinley's vehicle, it pulled away quickly and went across the roadway and up onto a concrete curb on the opposite side. Upon observing this driving behavior, Corporal Miller began following the vehicle, which accelerated approaching the highway. Corporal Miller testified that McKinley's vehicle's left wheels went over the centerline of the road through the curve that crosses railroad tracks which mark the limit of his jurisdiction. He stated that he did not stop McKinley's vehicle at that point because the vehicles were too far apart. After McKinley's vehicle went over the centerline two more times, Corporal Miller activated his emergency lights. The vehicle traveled two-tenths of a mile before pulling over at a point about one-half mile from the airport.

Corporal Miller noticed an odor of alcohol about McKinley's person. McKinley failed field sobriety tests and was arrested for driving under the influence of alcohol (DUI). He was given proper warnings

1. This case was reassigned to this author on    May 18, 1999.

pursuant to Section 1547 of the Vehicle Code, but he refused to submit to a chemical test of blood alcohol content. As a result, DOT imposed a one-year suspension of his operating privilege. McKinley conceded his refusal on appeal to the trial court. He limited the issues to whether Corporal Miller, as an airport police officer, had powers of arrest; whether the stop was invalid because it occurred outside airport property; and whether any violation occurred on airport property.

■ The trial court determined that Corporal Miller, who was commissioned by the Governor, was employed as a police officer for the Harrisburg International Airport Police and at the time in question was under the control of DOT pursuant to Section 5901 of the Aviation Code, 74 Pa. C.S. § 5901, relating to the Harrisburg International Airport. The court concluded that under Section 1.1 of the Act of May 21, 1943, *as amended,* P.L. 469, added by Section 1 of the Act of June 28, 1957, P.L. 435, 71 P.S. § 1791.1, the arresting powers of airport police are limited and do not include extraterritorial powers. The trial court stated that no specific vehicle violation occurred on the airport premises and that it was only after Corporal Miller left his jurisdiction that reasonable grounds developed to stop the vehicle. Once outside his jurisdiction, however, Corporal Miller did not have the authority to make an arrest because he did not possess extraterritorial powers. This Court's review of the trial court's decision to sustain McKinley's appeal is limited to determining whether all necessary findings of fact are supported by competent evidence and whether the trial court committed an error of law or abused its discretion. *Light v. Department of Transportation, Bureau of Driver Licensing,* 692 A.2d 652 (Pa.Cmwlth.1997).

I

■ To sustain a license suspension under Section 1547 of the Vehicle Code, DOT generally must prove that the licensee: (1) was arrested for driving while under the influence; (2) was asked to submit to chemical testing; (3) refused to do so; and (4) was specifically warned that a refusal would result in a license suspension. *Department of Transportation, Bureau of Driver Licensing v. Scott,* 546 Pa. 241, 684 A.2d 539 (1996). Where a licensee challenges the legal authority of the arresting officer, as opposed to some aspect of the manner of the arrest, DOT must prove that the officer had authority or the Court will reverse the suspension. *Kline v. Department of Transportation, Bureau of Driver Licensing,* 706 A.2d 909 (Pa. Cmwlth.1998), (challenge to the sufficiency of the training of the officer to authorize him to arrest for Vehicle Code violations, rev'd on other grounds —— Pa. ——, 741 A.2d 1281 (Pa.1999)); *Snyder v. Commonwealth,* 163 Pa.Cmwlth. 178, 640 A.2d 490 (1994) (challenge to the authority of a private university campus police officer to arrest for Vehicle Code violations).

The Court's holdings in *Kline* and *Snyder* indicate that if the licensee raises the issue of the authority of the arresting officer to enforce the Vehicle Code, the Court places the burden on DOT to prove the authority of the arresting officer in essence as a part of DOT's prima facie showing that the arrest was by a "police officer." DOT refers to *Kuzneski v. Commonwealth,* 98 Pa.Cmwlth. 595, 511 A.2d 951 (1986), to support its contention that the validity of the arrest is irrelevant to the question of whether a licensee refused chemical testing under Section 1547 of the Vehicle Code. In *Kuzneski* a licensee challenged a license suspension pursuant to Section 1547(b) on the grounds that the arresting police officer was outside his territorial jurisdiction. The Court upheld the suspension, stating that the issue was not whether the arrest was legal but whether the person requesting the test was a police officer. There the arresting officer unquestionably was a "police officer," and that was all that mattered.

In *Snyder* the licensee questioned whether a private university campus police officer was a "police officer" for purposes of making Vehicle Code arrests, and in *Kline* the licensee questioned whether the arresting deputy sheriff had completed the required training to authorize him to make such arrests. The Court considered these challenges because they were directed to the question of whether the arresting officers were "police officers," as distinct from the question of whether a police officer conducted a perfectly legal arrest. In the present case, McKinley's position is that Corporal Miller's special status rendered him not a police officer at all if he left the airport premises. To the extent that McKinley argues on this point that DOT was required to establish that Corporal Miller had completed adequate training to make Vehicle Code arrests, this issue was not raised below and therefore is waived. Pa. R.A.P. 302(a).

◼ DOT first notes that "police officer" is broadly defined in Section 102 of the Vehicle Code as "[a] natural person authorized by law to make arrests for violation of law." DOT asserts that Corporal Miller had the status of a Commonwealth police officer pursuant to several statutes. Under Section 5903(a)(10) of the Aviation Code, 74 Pa.C.S. § 5903(a)(10), DOT is authorized to provide "police protection" for the Harrisburg International Airport "in accordance with the Act of May 21, 1943 (P.L. 469, No. 210)...." Section 1.1 of that Act, 71 P.S. § 1791.1, headed "Certification of names of employes to act as police officers at buildings or installations; commissions; powers," provides as follows:

[T]he head of each administrative department having under its jurisdiction any building or installation owned by the Commonwealth, or any building or installation, for the protection of which the administrative department is responsible, shall certify to the Governor the names of employes of such administrative department who shall act as police officers at such buildings or installations.

If the Governor shall approve the persons designated, he shall issue to each a commission under which each employe shall have and exercise full power to make arrests without warrant for all violations of law which they may witness upon any part of the premises of any such building or installation as aforesaid, and to serve and execute warrants issued by the proper local authorities for any violation of law committed thereon or thereat. For such purposes and generally on the premises of such building or installation, the persons so commissioned shall have all the powers and prerogatives conferred by law upon constables of the Commonwealth.

In addition, Section 5903(b) of the Aviation Code provides that the powers and duties granted by that Act shall be exercised in accordance with The Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. §§ 51–732, where not inconsistent with Chapter 59 of the Aviation Code, 74 Pa.C.S. §§ 5901–5920. Section 2416 of The Administrative Code of 1929, 71 P.S. § 646, provides:

The Capitol Police, Commonwealth Property Police and the Security or Campus Police of all State colleges and universities ... shall have the power, and their duty shall be:

(a) To enforce good order in State buildings and on State grounds in Dauphin County ...;

. . .

(d) In the performance of their duties to adopt whatever means may be necessary;

(e) To exercise the same powers as are now or may hereafter be exercised under authority of law or ordinance by the police of the cities of Harrisburg, Pittsburgh and Philadelphia, municipalities in Dauphin County wherein State buildings are located and in municipalities wherein said colleges, universities and community colleges are located....

Therefore, DOT maintains that Corporal Miller had the same powers of arrest as a municipal police officer. As DOT notes, the courts have held that under 71 P.S. § 646 Capitol Police officers have the same powers as the traditional police in the municipalities in which they are employed. *Commonwealth v. Pennsylvania Labor Relations Board,* 502 Pa. 7, 463 A.2d 409 (1983); *Commonwealth v. Lymph,* 372 Pa.Super. 97, 538 A.2d 1368 (1988). The Court agrees that the same is thus true for Commonwealth property police officers.

The Court notes that 71 P.S. § 1791.1, in defining the powers of persons commissioned to act as police officers at Commonwealth buildings or installations, states that "the persons so commissioned shall have all the powers and prerogatives conferred by law upon constables of the Commonwealth." In *Commonwealth v. Roose,* 551 Pa. 410, 710 A.2d 1129 (1998), the Supreme Court addressed the question of the power of constables to make arrests for violations of the Vehicle Code. The court looked to English common law traditions regarding the authority of constables to make arrests, as it had done when the court considered the same question in regard to sheriffs in *Commonwealth v. Leet,* 537 Pa. 89, 641 A.2d 299 (1994). Not finding the same common law support for authority of constables to arrest, the court concluded that "as to constables, it seems appropriate to conclude that unless a statute empowers them to enforce the vehicle laws, then they do not possess the legal authority to do so." *Roose,* 551 Pa. at 413, 710 A.2d at 1130.

The Court does not conclude, however, that *Roose* is determinative on the question of Corporal Miller's authority in this case. The provisions of 71 P.S. §§ 1791.1 and 646 both address officers appointed to provide police service at Commonwealth facilities, and they therefore relate to the same class of persons. Accordingly, the Sections can be read in pari materia and shall be construed together as one statute if possible. Section 1932 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1932; *Concerned Citizens for Better Schools v. Brownsville Area School Dist.,* 660 A.2d 668 (Pa.Cmwlth.1995). If Commonwealth property police are limited to the same authority as constables under 71 P.S. § 1791.1, and that authority does not include the power to arrest for violations of the Vehicle Code under *Roose,* but the same persons are accorded the full powers of municipal police under 71 P.S. § 646, then the Sections are not reconcilable.

Where the provisions of two or more statutes that are enacted by different General Assemblies are irreconcilable, the statute latest in enactment shall prevail. Section 1936 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1936; *Chester Upland School District v. Mathews,* 705 A.2d 473 (Pa.Cmwlth.1997). As noted above, 71 P.S. § 1791.1 was added by the Act of June 28, 1957. The provisions of 71 P.S. § 646 relating to "Commonwealth Property Police" were added by Section 2 of the Act of March 28, 1961, P.L. 66, as an amendment to Section 2416 of the Administrative code of 1929. Consequently, 71 P.S. § 646 prevails, and officers such as Corporal Miller at the Harrisburg International Airport at the time of the arrest in question are to be regarded as having the full powers of traditional police in the municipality in which the Commonwealth facility is located. This determination gives effect to the intent of the General Assembly, which is the polestar of statutory construction. Section 1921(a) of the Statutory Construction Act of 1921, 1 Pa.C.S. § 1921(a); *Linde Enterprises, Inc. v. Department of Environmental Protection,* 692 A.2d 645 (Pa.Cmwlth.1997).[2]

---

**2.** Another indicator of the legislature's intent is an amendment affecting 71 P.S. § 646(h) in 1997. Formerly 71 P.S. § 646(e) expressly limited "Security and Campus Police," as opposed to "Capitol Police" and "Common- wealth Property Police," to exercising their duties "only on the premises of the State colleges and universities." Section 13 of the Act of November 26, 1997, P.L. 530, added Section 2416.1 of The Administrative Code of

## II

■ The next question concerns the extent of Corporal Miller's extra-territorial powers and whether he observed violations upon airport premises. Subchapter D of Chapter 89 of the Judicial Code includes Section 8953, *as amended,* 42 Pa.C.S. § 8953, relating to statewide municipal police jurisdiction. Pursuant to 42 Pa.C.S. § 8953(a)(2), a police officer has the power to enforce the laws of the Commonwealth outside the officer's primary jurisdiction "[w]here the officer is in hot pursuit of any person for any offense which was committed, or which he has probable cause to believe was committed, within his primary jurisdiction and for which offense the officer continues in fresh pursuit after the commission of the offense." *See Kinzer v. Department of Transportation,* 119 Pa. Cmwlth. 604, 547 A.2d 863 (1988) (where municipal police officer observed a motorist cross the centerline in his jurisdiction, he had authority under Section 8953(a)(2)

to pursue and to stop the motorist outside of his jurisdiction).

In the present case, as DOT notes, Corporal Miller stated that McKinley's vehicle "bolted" across the roadway from a stop and rode up on a curb on airport property, which could be deemed a violation of Section 3714 of the Vehicle Code, *as amended,* 75 Pa.C.S. § 3714, relating to careless driving. Also, he testified that McKinley's vehicle traveled with its wheels over the centerline before it left airport property, which is a violation of Section 3301 of the Vehicle Code, 75 Pa.C.S. § 3301, relating to driving on right side of roadway. Corporal Miller chose not to stop McKinley's vehicle at that point but to follow and investigate further. By the officer's testimony, which the trial court did not impugn as to credibility, he did observe violations of the Vehicle Code upon airport property, and the trial court erred as a matter of law in concluding otherwise. The officer's observation of these violations authorized him to make pursuit outside his primary jurisdiction under 42 Pa.C.S. § 8953(a)(2).[3]

1929, 71 P.S. § 646.1, which provides in subsection (a) that campus police shall have the power and duty:

> (5) to exercise the same powers as are now or may hereafter be exercised under authority of law or ordinance by the police of the municipalities wherein the college or university is located, including, but not limited to, those powers conferred pursuant to 42 Pa.C.S. Ch. 89 Subch. D (relating to municipal police jurisdiction).

The legislature unmistakably intended by this enactment to bring the powers of Security and Campus Police into line with those already enjoyed by Capitol Police and Commonwealth Property Police, i.e., the same as those of municipal police.

McKinley cites *Horton v. Department of Transportation, Bureau of Driver Licensing,* 694 A.2d 1 (Pa.Cmwlth.1997), among other cases, as a decision enforcing a territorial limitation on an arresting officer's jurisdiction. In *Horton* a University of Pittsburgh police officer stopped a motorist for running a red light on a public street, and this Court affirmed the trial court's decision that the officer lacked jurisdiction under 71 P.S. § 646(h). The legislature enacted 71 P.S. § 646.1 several months after that decision.

**3.** In addition, Corporal Miller's actions were justified under 42 Pa.C.S. § 8953(a)(5), which

provides that an officer also has power to enforce the law outside his or her primary jurisdiction where the officer is on official business and views an offense or has probable cause to believe that an offense has been committed and makes a reasonable effort to identify himself or herself as an officer, and the offense is a felony, misdemeanor, breach of the peace or other act "which presents an immediate clear and present danger to persons or property." In *Department of Transportation, Bureau of Driver Licensing v. Weichey,* 143 Pa.Cmwlth. 19, 598 A.2d 575 (1991), this Court held that where a borough officer saw a vehicle being driven erratically and over the speed limit in a borough and followed the vehicle and stopped it in the neighboring township, either 42 Pa.C.S. § 8953(a)(2) or (5) would support the arrest. *See Commonwealth v. Switzer,* 375 Pa.Super. 137, 543 A.2d 1216 (1988) (a Capitol Police officer on patrol away from State property who observed a vehicle speed and run a red light possessed authority under Section 8953(a)(5) to stop the vehicle and to arrest for driving under the influence when evidence of such appeared).

McKinley argues, however, that *Commonwealth v. McCandless,* 538 Pa. 286, 648 A.2d 309 (1994), precludes the application of Sec-

Corporal Miller's arrest of McKinley therefore was legal, and the order of the trial court sustaining McKinley's appeal is reversed.

## ORDER

AND NOW, this 25th day of October, 1999, the order of the Court of Common Pleas of Dauphin County is reversed, and the driver's license suspension of C. Larry McKinley is reinstated.

Judge COLINS dissents.

KELLEY, Judge, dissenting.

I respectfully dissent. I believe that DOT failed to meet its burden, before the trial court, of proving that Corporal Miller, as the arresting officer, had the legal authority to arrest McKinley for driving under the influence.

Herein, the only issue before the trial court was whether Corporal Miller had the authority to arrest McKinley and request that McKinley submit to chemical testing. The trial court determined that Corporal Miller was employed as a police officer for the Harrisburg International Police Department and was under the control of DOT.[1] However, the trial court concluded that pursuant to section 1.1 of the Act of May 21, 1943, P.L. 469, *added by* Act of June 28, 1957, P.L. 435 (Act of May 21, 1943),[2] the arresting powers of the airport police are limited to the extent that their powers do not include extraterritorial powers. Therefore, the trial court held that the question was whether sufficient grounds existed on airport property which would warrant Corporal Miller to reasonably believe that McKinley was driving

under the influence. Upon reviewing Corporal Miller's testimony, the trial court concluded that no such grounds existed. Accordingly, the trial court sustained McKinley's appeal and rescinded the suspension of his operating privilege.

In order to sustain a license suspension under section 1547 of the Vehicle Code, DOT must prove that the licensee: (1) was arrested for driving while under the influence; (2) was asked to submit to chemical testing; (3) refused to do so; and (4) was specifically warned that a refusal would result in a license suspension. *Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 521 Pa. 242, 555 A.2d 873 (1989). Where a licensee challenges the legal authority of the arresting officer, DOT bears the burden of proving that the officer has legal authority to make the arrest. *Kline v. Department of Transportation, Bureau of Driver Licensing*, 706 A.2d 909 (Pa.Cmwlth.1998); *Snyder v. Commonwealth*, 163 Pa.Cmwlth. 178, 640 A.2d 490 (1994). Unless DOT establishes that the arresting officer has such authority, this court shall reverse the suspension. *Id.*

Pursuant to section 5903 of the Vehicle Code, DOT is authorized to provide police protection for the Harrisburg International Airport in accordance with the Act of May 21, 1943. Section 1.1 of the Act of May 21, 1943, entitled **Certification of names of employes to act as police officers at buildings or installations; commissions; powers**, provides as follows

[T]he head of each administrative department having under its jurisdiction any building or installation owned by the Commonwealth, or any building or in-

---

tion 8953(a)(5). There the Supreme Court held that Section 8953(a)(5) expressly requires probable cause to believe that a violation was committed, not just reasonable suspicion, and that the arresting officer was not on "official business" for any purpose other than to determine, without prior probable cause, whether the car was speeding. As noted above, here Corporal Miller witnessed violations.

**1.** *See* Section 5901 of the Aviation Code, 74 Pa.C.S. § 5901. At the time of McKinley's arrest on January 4, 1997, the administration and control of the Harrisburg International Airport was vested in DOT pursuant to section 5901.

**2.** 71 P.S. § 1791.1.

stallation, for the protection of which the administrative department is responsible, shall certify to the Governor the names of employes of such administrative department who shall act as police officers at such buildings or installations. If the Governor shall approve the persons designated, he shall issue to each a commission under which each employe shall have and exercise full power to make arrests without warrant for all violations of law which they may witness upon any part of the premises of any such building or installation as aforesaid, and to serve and execute warrants issued by the proper local authorities for any violation of law committed thereon or thereat. For such purposes and generally on the premises of such building or installation, the persons so commissioned shall have all the powers and prerogatives conferred by law upon constables of the Commonwealth.

Accordingly, under the plain language of section 1.1 of the Act of May 21, 1943, the authority to make arrests by persons appointed and commissioned pursuant to this section is clearly limited. Corporal Miller, as a member of the Harrisburg International Airport Police Department, does not have the authority to make an extraterritorial arrest.[3] The members of the Harrisburg International Airport Police Department are only authorized to make arrests for violations of the law that they may witness upon any part of the airport premises. Therefore, the trial court did not err when it determined that Corporal Miller was not authorized to arrest McKinley outside the jurisdiction of the airport premises.

Moreover, pursuant to section 1.1 of the Act of May 21, 1943, for the purpose of making arrests and generally on the airport premises, the members of the Harrisburg International Airport Police Department shall have all the powers and prerogatives conferred by law upon constables of this Commonwealth. Our Supreme Court has recently held that the constables of this Commonwealth do not have the authority to enforce the motor vehicle laws as no statutory authority exists and the authority cannot be derived from the common law. *Commonwealth v. Roose*, 551 Pa. 410, 710 A.2d 1129, 1130 (1998). In *Roose*, the Supreme Court stated that unless a statute empowers constables to enforce the vehicle laws, then they do not possess the legal authority to do so. Therefore, I would hold that the members of the Harrisburg International Airport Police Department commissioned pursuant to section 1.1 of the Act of May 21, 1943 have no authority to enforce the motor vehicle laws of this Commonwealth whether such violation occurs on or off airport premises.[4]

In order to bestow the authority upon airport police officers to enforce the motor vehicle laws of this Commonwealth, the majority relies on Section 2416 of The Administrative Code of 1929 on the basis that Section 5903(b) of the Aviation Code provides that the powers and duties granted by the Aviation Code shall be exercised in accordance with The Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. §§ 51–732, where not inconsistent with Chapter 59 of the Aviation Code, 74 Pa.C.S. §§ 5901–5920. As correctly cited by the majority, Section 2416 of The Administrative Code governs the powers and duties of capitol police,

---

**3.** Corporal Miller testified that he was certified by the governor of the Commonwealth, received a commission, and that his powers were legislatively defined. DOT did not present any evidence before the trial court to prove that Corporal Miller was hired in any capacity other than a police officer commissioned pursuant to Section 1.1 of the Act of May 21, 1943.

**4.** I note that, in its brief, DOT conveniently omits this part of Section 1.1 of the Act of May 21, 1943, when discussing this section. In addition, DOT fails to mention to this Court our Supreme Court's recent ruling in *Roose*.

Commonwealth property police and campus police.

The majority determines that because Section 2416 of the Administrative Code and Section 1.1 of the Act of May 21, 1943 relate to the same class of persons, the sections can be read in pari materia and construed as one statute if possible. However, the majority concludes that the two sections are irreconcilable. Therefore, because Section 2416 of The Administrative Code was enacted after Section 1.1 of the Act of May 21, 1943, the majority holds that Section 2416 prevails. Accordingly, the majority holds that officers such as Corporal Miller at the Harrisburg International Airport at the time of the arrest in question are to be regarded as having the full powers of traditional police in the municipality in which the Commonwealth facility is located. I believe that this holding and the majority's reasoning in support thereof ignores the clear statutory language found in Section 5903(b) of the Aviation Code.

As stated previously herein, Section 5903(b) provides that the powers and duties granted by the Aviation Code shall be exercised in accordance with The Administrative Code of 1929 where not inconsistent with Chapter 59 of the Aviation Code. It is undisputed that Section 5903(a)(10) clearly permitted DOT to provide police protection for the Harrisburg International Airport in accordance with the Act of May 21, 1943. Section 1.1 of the Act of May 21, 1943 expressly confers upon those persons commissioned as airport police officers serving the Harrisburg International Airport "all the powers and prerogatives conferred by law upon constables of the Commonwealth." 71 P.S. § 1791.1. Thus, Section 2416 of the Administrative Code, which bestows upon capitol police, Commonwealth property police and campus police the same powers exercised by municipal police officers, is clearly inconsistent with Section 5903(a)(10) of the Aviation Code. Accordingly, pursuant to Section 5903(b) of the

Aviation Code, Section 2416 of the Administrative Code should not be considered when the powers and duties granted by the Aviation Code are exercised. Therefore, the majority's holding that Section 2416 of The Administrative Code bestows additional powers and duties upon officers such as Corporal Miller is in contravention of the Aviation Code.

Moreover, if the General Assembly wished to broaden the powers of those persons commissioned as airport police officers pursuant to Section 1.1 of the Act of May 21, 1943, it could have expressly done so at the time it amended The Administrative Code in 1961. It did not. Accordingly, I would reject DOT's contention that Corporal Miller had the full powers of traditional police pursuant to Section 2416 of the Administrative Code at the time he pursued and arrested McKinley for driving under the influence.

Thus, I would affirm the order of the trial court sustaining McKinley's appeal and rescinding the one-year suspension of his operating privilege for refusing to take a chemical test pursuant to section 1547 of the Vehicle Code, 75 Pa.C.S. § 1547.

Judge FRIEDMAN joins in this dissenting opinion.