**INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS, LOCAL 22, AFL–CIO, Petitioner**

v.

**PENNSYLVANIA LABOR RELATIONS BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 18, 2011.

Decided Jan. 18, 2012.

---

Ralph J. Teti, Philadelphia, for petitioner.

Peter Lassi, Harrisburg, for respondent.

Shannon Druri–Lanessa Farmer, Philadelphia, for intervenor, City of Philadelphia.

BEFORE: PELLEGRINI, Judge,[1] and McCULLOUGH, Judge, and FRIEDMAN, Senior Judge.

1. This case was assigned to the opinion writer before January 7, 2012, when Judge Pellegrini became President Judge.

OPINION BY Judge McCULLOUGH.

The International Association of Fire Fighters, Local 22, AFL–CIO (Local 22) petitions for review of the September 21, 2010, order of the Pennsylvania Labor Relations Board (Board) determining that Fire Service Paramedics (FSPs) are not firefighters under the statute commonly known as Act 111.[2] We reverse.

Local 22 is the exclusive bargaining representative of all uniformed fire personnel employed by the Philadelphia Fire Department (Fire Department), including firefighters and about two hundred FSPs. (Hearing examiner's Findings of Fact, No. 1.) The Fire Department responds to all life-safety emergencies citizens may encounter, including structural collapses, car accidents, industrial accidents, hazardous materials spills, and fires. (Hearing examiner's Findings of Fact, No. 3.) Fire emergencies make up only a minute portion of the call volume for the Fire Department. *Id.* Although their training is different, both FSPs and firefighters must attend a fire academy operated by the Fire Department. (Hearing examiner's Findings of Fact, No. 4.) An FSP's primary duty is to provide emergency medical services to members of the public. (Hearing examiner's Findings of Fact, No. 5.) At a fire scene, FSPs establish a first aid station in close proximity to the fire in order to render medical care to firefighters and civilians who are injured. (Hearing examiner's Findings of Fact, No. 6.) FSPs also establish a rest and rehabilitation station where they can monitor the condition of the firefighters. *Id.* In addition, FSPs occasionally perform firefighting tasks such as "move and hold ladders, establish water connections, move hoses, and direct water on 'burning material at fire scenes.'" (Hearing Examiner's op. at 4.)

■ Both firefighters and FSPs have been included in the Local 22 bargaining unit for over twenty years. However, on March 12, 2009, the City of Philadelphia (City) filed a unit clarification petition with the Board, seeking to have all FSPs removed from the Local 22 bargaining unit on the basis that they are not firefighters within the meaning of Act 111. After hearings on the matter, the Board's hearing examiner agreed with the City and determined that FSPs are not firefighters under Act 111 and the Pennsylvania Labor Relations Act (PLRA).[3]

After the hearing examiner's February 22, 2010 decision but before the Board's decision on September 21, 2010, the Philadelphia City Council amended § F–104.2 of the Philadelphia Fire Code (Fire Code) to provide that:

> The fire department official in charge at the scene of a fire or other emergency involving the protection of life or proper-

---

**2.** Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. §§ 217.1–217.12. Section 1 of Act 111 provides that:

> Policemen or firemen employed by a political subdivision of the Commonwealth or by the Commonwealth shall, through labor organizations or other representatives designated by fifty percent or more of such policemen or firemen, have the right to bargain collectively with their public employers concerning the terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits,

and shall have the right to an adjustment or settlement of their grievances or disputes in accordance with the terms of this act.

43 P.S. § 217.1.

**3.** Act of June 1, 1937, P.L. 1168, No. 294, *as amended,* 43 P.S. §§ 211.1–211.39. Because Act 111 does not provide an explicit procedure for selecting a collective bargaining representative, it is construed *in pari materia* with the PLRA. *Philadelphia Fire Officers Association v. Pennsylvania Labor Relations Board,* 470 Pa. 550, 369 A.2d 259 (1977).

ty or any part thereof, shall have the authority to direct uniformed Fire Department personnel, including but not limited to Firefighters and Fire Service Paramedics, to engage in such actions that are necessary in order to complete the assignment, including but not limited to fire rescue, fire abatement, and emergency medical services. Because of their Legislative authority to act and actual participation in such operations, Fire Service Paramedics shall continue to be considered firemen for the purposes of [Act 111].

Philadelphia, PA, 2010 Philadelphia Fire Code § F–104.2 (2010) (available at www.phila.gov).

Act 111 gives "policemen" and "firemen" employed by the Commonwealth or a political subdivision thereof the right to bargain collectively with their public employers. Because Act 111 does not define "policemen" or "firemen," our courts have adopted the following two-part test: to be a firefighter or police officer within the meaning of Act 111, one must be both (1) legislatively authorized to act as such; and (2) actually engaging in firefighting or police activities. *Allegheny County Deputy Sheriffs' Association v. Pennsylvania*

*Labor Relations Board,* 990 A.2d 86 (Pa. Cmwlth.) *appeal granted,* 606 Pa. 506, 1 A.3d 867 (2010); *County of Lebanon v. Pennsylvania Labor Relations Board,* 873 A.2d 859 (Pa.Cmwlth.2005).

The Board declined to address the question of whether FSPs have legislative authorization to fight fires because, in its view, even if the FSPs satisfied the first part of the test for Act 111 firefighters, they are not actively engaged in firefighting and thus do not meet the second part of the test.

■■■ On appeal to this court,[4] Local 22 argues that the amendments to the Fire Code, read together with the Philadelphia Home Rule Charter (Charter), 351 Pa. Code §§ 1.1–100 to 12.1–503, clearly give FSPs authority to perform firefighting tasks. We agree.[5]

The Charter specifically requires the City to create a Fire Department charged with extinguishing fires, administering and enforcing statutes and regulations regarding fires and explosion hazards, instituting and conducting fire prevention programs, training and supervising fire personnel, and operating a fire alarm system. 351 Pa.Code § 5.5–400.[6] The Fire Department

---

**4.** Our scope of review is limited to determining whether the PLRB's essential findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *School District of Philadelphia v. Pennsylvania Labor Relations Board,* 719 A.2d 835, 837 (Pa.Cmwlth.1998).

**5.** Unlike the dissenting view, we see no jurisdictional issue with the Board determining whether FSPs are firefighters under Act 111. In *Commonwealth v. State Conference of State Police,* 525 Pa. 40, 575 A.2d 94 (1990), our Supreme Court specifically noted that the PLRB has "original jurisdiction to establish the classifications of employees who are included within the bargaining unit under ... Act 111," and that "the proper forum for

challenging the bargaining unit designated by the employees is the PLRB." *Id.* at 48, 575 A.2d at 98.

**6.** Specifically, this provision of the Charter provides:

The Fire Department shall have the power and its duty shall be to perform the following functions:

(a) Fires. It shall extinguish fires at any place within the limits of the City and, upon the request of appropriate authorities and with the authorization of the Fire Commissioner, outside the limits of the City.

(b) Fire Hazards and Safety. The Department shall administer and enforce statutes, ordinances and regulations relating to fire and explosion hazards including those dealing with the manufacture, storage, sale,

employs both firefighters and FSPs to work at emergency scenes with the shared goal of saving lives. In order to settle any doubt as to whether FSPs have the authority to fight fires, City Council recognized such by amending the Fire Code to explicitly authorize the Fire Department to direct Fire Department personnel, including but not limited to firefighters and FSPs, to "engage in such actions that are necessary in order to complete the assignment, including but not limited to fire rescue, fire abatement, and emergency medical services." Fire Code § F–104.2. Moreover, Section F–104.2 of the Fire Code explicitly states that FSPs have legislative authority to act and actually participate in firefighting operations. *Id.* We therefore conclude that the first part of the two-part test has been satisfied.

■ Having determined that FSPs are legislatively authorized to fight fires, we turn now to the question of whether FSPs actually engage in firefighting. The Board concluded that FSPs did not actually engage in firefighting because any firefighting they do is "merely incidental to their primary duty of responding to medical emergencies." (Board's opinion at 3–4.) We disagree. The medical services now provided primarily by FSPs have histori-

cally been an integrated service of any fire department. The interrelated duties performed by firefighters and FSPs are equally necessary and appropriate in the firefighting effort; they work together to accomplish the same overall goal of saving lives and property. Surely, the person who monitors the health of the other responders at the scene is just as important to the firefighting effort as the person who runs into a burning building with a hose. It would be patently unfair to say that FSPs do not "fight fires" when, in fact, they are present at fire scenes; they monitor the health of those persons who are doing physical battle with the fire; and, when needed, they are called upon to do physical battle with the fire themselves. To conclude otherwise ignores the realities of a large, metropolitan fire department in which specialization of activities allows for greater efficiency.[7]

Our conclusion is consistent with *Maust v. Fireman's Relief Association of Washington,* 444 Pa. 502, 282 A.2d 239 (1971) (holding that a retired fireman was entitled to his pension even though, subsequent to an injury, he spent his time primarily as a firebox inspector/fire inspector and only secondarily fought fires at the request of the fire chief), where our su-

transportation or use of any substance or article which is or may be combustible, inflammable or explosive, the installation of any containers for such substances or articles, the installation and use of any equipment which presents a hazard of fire or explosion, and fire escapes, emergency exits, occupancies, fire alarm systems and fire extinguishing equipment in any vessel, vehicle, premises, grounds, structure, building or underground passage.
(c) Fire Prevention Programs. The Department shall institute and conduct programs of public education in fire prevention and safety.
(d) Maintenance of Firemen. The Department shall train, equip, maintain, supervise

and discipline an adequate number of firemen.
(e) Fire Alarm System. The Department shall operate a fire alarm system either as a separate system or in conjunction with the police signal system of the Police Department.

7. We distinguish this case from our holding in *County of Lebanon v. Pennsylvania Labor Relations Board,* 873 A.2d 859 (Pa.Cmwlth. 2005), where we addressed whether hazmat team members were fire personnel under Act 111. In that case, we concluded that hazmat workers were not legislatively authorized to act as fire personnel and, accordingly, we declined to determine whether they did, in fact, act as fire personnel. *Id.* at 866.

preme court recognized that "firefighting" involves more than spraying water on fires. The court specifically noted that limiting the definition of "firefighting" to "pulling hose, squirting water, or driving a truck is hard to fathom" because firefighting "has become much more complicated in the modern technological world." *Id.* at 504–05, 282 A.2d. at 240.

Even if we were to conclude that FSPs are only "firefighting" on the rare instances in which they assist firefighters in fire abatement, we would still conclude that FSPs are engaged in firefighting for purposes of Act 111. First of all, it is worthwhile to remember that the majority of emergencies that both FSPs and firefighters respond to are not fire emergencies. (Hearing Examiner's Findings of Fact, No. 3.) Fire emergencies are, in fact, only a minute portion of the Fire Department's entire call volume. *Id.* Yet no one would seriously contend that firefighters are not covered by Act 111 because the vast majority of their work does not involve fighting fires. We see no reason FSPs should be treated differently.

Moreover, in *Commonwealth v. Pennsylvania Labor Relations Board*, 502 Pa. 7, 463 A.2d 409 (1983) (holding that the Capital Police were covered by Act 111 even though they performed police-like functions such as making arrests and issuing parking citations less often than other police officers), our Supreme Court rejected the idea that the frequency with which Act 111–type functions were performed automatically determined whether a group was covered by Act 111. Similarly, here, the infrequency with which FSPs actually direct water on the flames of a fire does not mean that they do not participate in fire abatement. It only means that, by virtue of the way the Fire Department is organized, doing so is unnecessary most of the time.

For all of the foregoing reasons, we reverse.

### ORDER

AND NOW, this 18th day of January, 2012, the September 21, 2010 order of the Pennsylvania Labor Relations Board is hereby reversed.

DISSENTING OPINION BY Judge PELLEGRINI.

While the majority has issued a well-reasoned decision with which I do not disagree, I dissent because I would hold that the Pennsylvania Labor Relations Board does not have jurisdiction to decide who is or is not a firefighter because that is a constitutional question over which the Pennsylvania Labor Relations Board does not have jurisdiction.

In *Erie Firefighters Local 293 of Inter. Ass'n. of Firefighters v. Gardner*, 406 Pa. 395, 178 A.2d 691, 695 (1962), our Supreme Court, interpreting then Article 3, Section 20 of the Pennsylvania Constitution,[1] which prohibited delegation of governmental functions, held that interest arbitration was an unlawful delegation of governmental authority.

As a result, a 1968 constitutional amendment was presented to the voters to amend that provision to allow interest arbitration for firemen and policemen by adding the italicized portion to that section below.

The General Assembly shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or

---

**1.** Now numbered Article 3, Section 3.

otherwise, or to levy taxes or perform any municipal function whatsoever. *Notwithstanding the foregoing limitation or any other provision of the Constitution, the General Assembly may enact laws which provide that the findings of panels or commissions, selected and acting in accordance with law for the adjustment or settlement of grievances or disputes or for collective bargaining between **policemen and firemen** and their public employers shall be binding upon all parties and shall constitute a mandate to the head of the political subdivision which is the employer, or to the appropriate officer of the Commonwealth if the Commonwealth is the employer, with respect to matters which can be remedied by administrative action, and to the lawmaking body of such political subdivision or of the Commonwealth, with respect to matters which require legislative action, to take the action necessary to carry out such findings.*

The General Assembly then enacted Act 111 in 1968, Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. §§ 217.1–217.10. Act 111 only dealt with how contract disputes proceeded to arbitration and did not include the normal subjects contained in collective bargaining statutes such as what constituted the appropriate bargaining unit.

To flesh out Act 111, in *Philadelphia Fire Officers Association v. Pennsylvania Labor Relations Board,* 470 Pa. 550, 369 A.2d 259 (1977), a case dealing with whether a separate bargaining unit should be created for fire officers, our Supreme Court held that Act 111 is to be read *in pari materia* with the Pennsylvania Labor Relations Act.

While under *Philadelphia Fire Officers,* the Pennsylvania Labor Relations Board can decide whether firefighters have the requisite community of interest to be included in a bargaining unit or have to have a separate unit, that jurisdiction does not extend to who is and is not a firefighter. That is, ultimately, a constitutional question which is resolved, in the first instance, by how the governmental entity classifies employees, i.e., if they call them firefighters, they are firefighters for purposes of Act 111. If the governmental entities remove employees from the fire department to another department and refuse to engage in interest arbitration, then an action has to be brought to a court to decide whether the employees who are removed are firefighters within the meaning of Article 3, Section 20, which is not within the Pennsylvania Labor Relations Board's jurisdiction.

Accordingly, I would vacate the order of the Pennsylvania Labor Relations Board.